UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) MOISES ANTONIO SOTO and<br>(2) KIERSTEN SOTO,<br><br>Defendants | Criminal No. 22-cr-40027-MRG |

## GOVERNMENT'S SENTENCING MEMORANDUM

In February through May 2022 KIERSTEN and MOISES Soto had one occupation. They sold Victim 1 for sex to as many strangers as possible to make as much money as possible. Victim 1, KIERSTEN Soto's half-sister, was suffering from terrible drug addiction. Victim 1 had nowhere to live, no job, no support, and no options. The defendants knew all that. They knew how vulnerable she was and exploited those vulnerabilities to force Victim 1 to do whatever they wanted. These defendants, who knew Victim 1 so well and knew her struggles, weaponized Victim 1's struggles against her. These defendants did not do their own grocery shopping, pick up their own food, or even leave the house to pick up the drugs they wanted. They used Victim 1 for all of that. The defendants certainly did not seek legitimate employment. Why would they? They could make all the money they needed selling Victim 1 for sex across multiple states for hundreds of dollars per date.

Through KIERSTEN's relentless threats and abuse, through MOISES's brutal physical violence, and their combined withholding of Percocets and fentanyl from drug-addicted Victim 1, they were able to traffic her to hundreds of strangers KIERSTEN met on the internet. 20-year old Victim 1, KIERSTEN's little sister, had no choice. If Victim 1 did not answer her phone quickly

enough, MOISES beat her with his fists, beat her with sticks or wooden dowels and choked her. If Victim 1 missed a prostitution date, the defendants withheld the Percocets that Victim 1 was so badly addicted to, forcing her to suffer through agonizing withdrawals – shaking, vomiting, enduring intense physical pain. If Victim 1 did not make enough money selling her body, the defendants threatened to abandon her – to lock her out of her home. If the defendants thought Victim 1 had taken any drugs without their permission, MOISES went ballistic and beat her. If Victim 1 did not respond to a Facebook or text message within 30 seconds, the defendants threatened to Section her – to have her involuntarily committed to a facility. During this whole period, when Victim 1 obeyed the defendants and had sex with as many strangers as the defendants wanted, the defendants kept all the money she made.

The Court saw the toll the defendants' crimes took on Victim 1. During the course of two days of Victim 1's testimony the Court saw how these defendants had ruined her life, caused her so much pain, treated her like an animal, and used her until she finally was able to escape. When Victim 1 was at her most desperate, after being beaten so badly that the defendants could not even sell her to strangers, Victim 1 ran to one of her prostitution customers and told him everything. Think about how desperate Victim 1 must have been and how devoid of support she was, that in a situation so desperate, the only person she could turn to for help, also happened to be one of her sex buyers.

Based on the defendants' brutal, depraved, and egregious conduct, which resulted in convictions for all crimes charged in this case, the government recommends this Court sentence each defendant to 18 years in prison (216 months) followed by five years of supervised release and order restitution in the amount of $138,000 to Victim 1. Given the defendants' horrifying crimes, 216 months of incarceration represents the middle of their Guidelines Sentencing Range

("GSR"). This sentence is sufficient, but not greater than necessary, given the Sentencing Guidelines and the applicable sentencing factors under 18 U.S.C. § 3553(a).

    **I.    ADVISORY SENTENCING GUIDELINES AND STATUTORY PENALTIES[1]**

The Presentence Reports ("PSR") prepared by the United States Probation Office ("USPO") found that the defendants' base offense level for the most serious charge, sex trafficking by force, fraud, and coercion was 34. MOISES PSR ¶ 28; KIERSTEN PSR ¶ 30. The USPO increased the defendants' offense level by two because Victim 1 was a "vulnerable victim" under USSG § 3A1.1(b)(1). MOISES PSR ¶ 30; KIERSTEN PSR ¶ 34. The defendants have not accepted responsibility for their crimes and received no decrease under USSG § 3E1.1. MOISES PSR ¶ 35; KIERSTEN PSR ¶ 37. Each defendant has a total offense level of 36. MOISES PSR ¶ 36; KIERSTEN PSR ¶ 38. Neither defendant has any criminal history, and therefore, both defendants are in Criminal History Category I. MOISES PSR ¶¶ 40-41; KIERSTEN PSR ¶¶ 42-43. For Count One, the defendants' mandatory minimum term of imprisonment is 15 years. MOISES PSR ¶ 97; KIERSTEN PSR ¶ 112.

Given the resulting total offense level and criminal history, the defendants' GSR is 188 – 235 months and five years to life of supervised release. MOISES PSR ¶¶ 98, 102; KIERSTEN PSR ¶¶ 113, 117. The government agrees with the USPO's calculation of total offense level, criminal history, and GSR.

MOISES Soto has objected to the application of a two-level enhancement under USSG § 3A1.1(b)(1). MOISES Objection #4. The USPO disagreed and highlighted the following facts

---

[1] The defendants each have the same GSR, and therefore, this section addresses both defendants' advisory Guidelines together. For paragraph references, the government has noted "KIERSTEN PSR" and "MOISES PSR."

regarding Victim 1: Victim 1 was homeless, dependent on controlled substances, financially dependent on the defendants, and young – 20 years old at the trafficking. These were precisely the vulnerabilities the defendants exploited when withholding drugs from her, threatening to have her involuntarily committed, and threatening to kick her out of the house or otherwise abandon her. KIERSTEN Soto, in particular, played a large role in Victim 1's childhood and was able to exploit that relationship to traffic Victim 1. Moreover, contrary to MOISES's statement in his objection, there is nothing specific in the sex trafficking guideline, USSG § 2G1.1, which already accounts for victim vulnerability. Although vulnerable victims may be common in sex trafficking cases, there is no special requirement that a trafficker's victims be vulnerable to secure a conviction for this offense.

    A victim's personal characteristics, such as homelessness, financial difficulties, addiction to drugs, and family problems can cause a particular individual, depending on the circumstances, to be unusually vulnerable to a defendant's sexually exploitive crimes. *See, e.g.*, *United States v. Rainford*, 110 F.4th 455, 486 (2d Cir. 2024) (holding that a scheme which targeted individuals who were homeless and "down and out" involved vulnerable victims); *United States v. Irving*, 554 F.3d 64, 75 (2d Cir. 2009) (homeless children without parental or other adult guidance vulnerable victims to defendant's sexual offenses); *United States v. Evans*, 272 F.3d 1069, 1091 (8th Cir. 2001) (minor victim vulnerable to prostitution when defendant knew she was drug-addicted and gave her alcohol and drugs); *United States v. Pavao*, 948 F.2d 74, 78 (lst Cir. 1991) (20-year-old, who defendant knew was a drug user vulnerable to defendant's impersonating a federal drug

agent). Here, both defendants knew Victim 1 well, understood her vulnerabilities, and exploited those vulnerabilities in forcing her to engage in commercial sex for their financial benefit.

## II.    18 U.S.C. § 3553(a) SENTENCING FACTORS

Consideration of the § 3553(a) factors demonstrates that 216 months' incarceration and five years of supervised release is sufficient, but not greater than necessary, to meet the goals of sentencing.

### A.    Nature of the Offense

The cruel and depraved nature of the defendants' crimes requires a significant sentence of imprisonment. The defendants used threats of violence, threats of abandonment, threats of involuntary commitment, actual brutal physical violence, and the giving and withholding of drugs to Victim 1 to force her to engage in commercial sex hundreds of times over four months. The defendants did everything together. They were convicted of conspiracy, and in many ways, this was the most equal criminal partnership the government has seen in a sex-trafficking case. These defendants spent all day, every day, together. When KIERSTEN was setting up prostitution dates for Victim 1 and negotiating with customers about whether or not they had to wear a condom, purchase Plan B, or whether or not they could engage in anal sex with Victim 1, MOISES was there. When MOISES contacted their drug dealer, Bebo, to get more fentanyl and coordinated with Victim 1 to get it, KIERSTEN was there. When KIERSTEN threatened Victim 1 with MOISES's violence, MOISES was there. When MOISES actually did beat Victim 1 with his fists, choke her, beat her with sticks and dowel rods, slam her up against the wall, and hold her down, KIERSTEN was there. They both withheld drugs, or doses, from Victim 1 when Victim 1 failed to make enough money, did not answer her phone fast enough, did not come home quick enough, or attempted to hide (or they thought she was hiding) drugs from their drug dealer. Again, this

5

was an equal partnership.  These defendants used each other's cell phones and Facebook accounts interchangeably to commit these crimes.  They knew what the other was doing because they were together all the time.  That is why the government is taking the somewhat unusual step of filing a joint sentencing memorandum.  As this Court saw first-hand at trial, you simply cannot untangle their criminal conduct.

These defendants knew when Victim 1 was hurting or sick from drug withdrawals.  They made her go out and earn more money on prostitution dates.  They threatened her incessantly with violence, abandonment, and drug withholding.  All the money she made, went to these defendants.  In fact, KIERSTEN figured out a way to cut Victim 1 out of the financial deal completely by having customers pay KIERSTEN directly through Venmo or CashApp.

In examining the seriousness of the offenses, the Court must review the harm to the victims. *See United States v. Cunningham*, 680 F. Supp. 2d 844, 855 (N.D. Ohio 2010).  Fifty-five percent of women and children who have been sold in the commercial sex trade report suffering from PTSD and 42% report attempting suicide at least once.[2]  Indeed, few crimes offend the public's core values as deeply as sex trafficking.  "[S]ex trafficking infringe[s] upon the individual rights and freedoms that are central ideals to the United States and are protected under the U.S.

---

[2] "The Health Consequences of Sex Trafficking and Their Implications for Identifying Victims in Healthcare Facilities."  Annals of Health Law 23, 61-91.

Constitution."³  It should come as no surprise that Congress chose to punish such a crime with a mandatory minimum term of 15 years of imprisonment.

These crimes devastated Victim 1.  It is hard to quantify the damage these defendants did to her.  The Court got to observe Victim 1 on the stand – timid, shrinking, sick, and desperate to get out of that courtroom and away from the defendants.  The Court also got to look at an alternate view of what Victim 1's future might have been.  A witness at the trial, a high school friend of Victim 1's, testified.  She and Victim 1 had been friends, hung out together, worked together at their part-time retail jobs.  This witness had a stable relationship, a good job in the healthcare field, and presented as a bright young woman doing well in the world.  This Court should consider what could have been Victim 1's future but for the defendants' brutalization and victimization of her.  This Court should consider what these defendants took from Victim 1, and the permanent harm they caused her.  Their crimes were truly horrific, and they both deserve a serious sentence of imprisonment.

B. **History and Characteristics of the Defendant**

As this Court heard during trial, the defendants decided to exploit a vulnerable victim for their financial gain rather than seek or engage in legitimate employment.  Both defendants had other alternatives to engaging in trafficking, but still chose to commit these horrible crimes.  MOISES graduated from high school and completed three years of college.  He also received training as a machinist.  MOISES PSR ¶¶ 82-83.  He had some stable employment prior to the pandemic. MOISES PSR ¶ 92.  KIERSTEN Soto maintained service industry employment prior to the pandemic.  KIERSTEN PSR ¶¶ 105-06.  Unlike many defendants that come before this

---

³ U.S. Dep't of Justice, "National Strategy to Combat Human Trafficking," at 3 (Jan. 2022), *available at* https://www.justice.gov/d9/press-releases/attachments/2022/01/31/doj_ht_strategy.pdf.

7

Court, both defendants are U.S. citizens with no legal barriers to lawful employment. Despite having employment opportunities, when they faced economic adversity, they relied on trafficking Victim 1 for prostitution for their own financial benefit. This factor weighs heavily in favor of a significant prison sentence.

Both defendants clearly suffered from addiction and were personally using a portion of the drugs they had Victim 1 buy from their drug dealer. As they did at trial, they may try to use these addiction struggles to explain or mitigate their own criminal actions. However, it is particularly shameful that two defendants who knew exactly how powerful opioid addiction was and knew exactly how it felt to withdraw and be dope sick, used Victim 1's addiction to force her to prostitute for them. Addiction is not a pass to brutalize others. Weaponizing someone else's addiction despite knowing how powerful it can be is even more egregious.

### C. Deterrence and Protection of the Public

For these heinous crimes, a significant sentence of imprisonment is necessary to ensure these defendants will not engage in the exploitation of vulnerable people for their own financial gain ever again. As stated above, these defendants had other options in life but chose to traffic Victim 1 for commercial sex. This Court should impose a significant prison sentence to ensure they never commit these crimes again, and just as importantly, never choose to exploit vulnerable people to solve their own financial difficulties.

It is also important for this Court to send a message of general deterrence with a significant prison sentence. Sex traffickers often believe that they will not be held accountable for their actions. They believe that because their victims are among the most vulnerable in society that they will be afraid to speak with law enforcement, that they will be afraid to show up in court to testify, that they will not trust our criminal justice system to work properly on victims' behalf. A

significant sentence of imprisonment for the crimes the defendants committed is necessary to send a strong message of respect for the law, to encourage victims to come forward with information about these traffickers, and to deter other would-be traffickers from committing these horrible crimes.

### III. RESTITUTION[4]

Under 18 U.S.C. § 1593, the victim in this case, Victim 1, is entitled to mandatory restitution for the "value to the defendant of the victim's services or labor to the defendant." The government requests that the Court adopt the analysis and calculations outlined in MOISES PSR ¶¶ 21-22 and KIERSTEN PSR ¶ 23. These calculations represent a conservative estimate of the value of Victim 1's services and labor to the defendants. Given that the defendants took all the money Victim 1 made during the course of their trafficking, Victim 1 is entitled to restitution in the amount of $138,000. As part of the defendants' sentences, this Court should order them to pay Victim 1 $138,000.

### IV. CONCLUSION

Because the defendants used violence, threats, withholding of drugs to a drug-addicted victim, to force Victim 1 to prostitute solely for their own financial benefit, and because the defendants have shown no remorse or acceptance of responsibility for their crimes, this Court

---

[4] The government filed a more detailed Motion for Mandatory Restitution, Docket No. 265, and incorporates its arguments and calculations by reference.

should sentence them to 216 months in prison and five years of supervised release and order restitution in the amount of $138,000.

                                         Respectfully submitted,

                                         LEAH B. FOLEY
                                         United States Attorney

By:    */s/ Stephen W. Hassink*
        Stephen W. Hassink
        Torey B. Cummings
        Assistant United States Attorneys

Dated: December 6, 2025

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

                                         */s/ Stephen W. Hassink*
                                         Stephen W. Hassink
                                         Assistant United States Attorney

Dated: December 6, 2025